**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| MICHAEL R. PHILLIPS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 08-CV-770-TLW |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

**OPINION AND ORDER**

Plaintiff Michael Phillips seeks judicial review of a decision of the Commissioner of the Social Security Administration denying his claim for disability insurance and supplemental security income benefits under Title II and XVI of the Social Security Act, 42 U.S.C. §§ 416(i), 423, and 1382c(a)(3)(A). In accordance with 28 U.S.C. § 636(c)(1) & (3), the parties have consented to proceed before a United States Magistrate Judge. [Dkt. # 9].

Plaintiff's applications for disability insurance benefits and supplemental security income were filed on August 1, 2005, alleging an onset date of October 1, 2003. [R. 65, 380]. The Administrative Law Judge ("ALJ") held a hearing on May 6, 2008. [R. 393]. By decision dated May 30, 2008, the ALJ entered the findings that are the subject of this appeal. [R. 15]. The Appeals Council denied review on October 31, 2008. [R. 5]. The decision of the Appeals Council represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481. On December 29, 2008, plaintiff filed the subject action with this Court. [Dkt. # 1].

The role of the Court in reviewing a decision of the Commissioner under 42 U.S.C. § 405(g) is only to determine whether substantial evidence supports that decision and whether the applicable legal standards were applied correctly. See Briggs ex. rel. Briggs v. Massanari, 248 F.3d 1235, 1237

(10th Cir. 2001). Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The Court may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. Casias v. Secretary of Health & Human Service, 933 F.2d 799, 800 (10th Cir. 1991).

A claimant for disability benefits bears the burden of proving that he is disabled. 42 U.S.C. § 423 (d)(5); 20 C.F.R. §§ 404.1512(a), 416.912(a). "Disabled" is defined under the Act as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To meet this burden plaintiff must provide medical evidence of an impairment and the severity of his impairment during the time of his alleged disability. 20 C.F.R. §§ 404.1512(b), 416.912(b). Disability is a physical or mental impairment "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C.§ 423 (d)(3). "A physical impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [an individual's] statement of symptoms." 20 C.F.R. §§ 404.1508, 416.908. The evidence must come from "acceptable medical sources" such as licensed and certified psychologists and licensed physicians. 20 C.F.R. §§ 404.1513(a), 416.913.

On appeal, plaintiff asserts the ALJ propounded a faulty hypothetical question to the vocational expert; the Appeals Council failed to perform a proper analysis of the treating physician's

2

opinion; and the ALJ failed to perform a proper credibility determination. [Dkt. # 14 at 6].

## Background

Plaintiff is an American Indian. [R. 219]. He was born on February 27, 1958, and was 50 years old on the date of the hearing before the ALJ. [R.405-406]. Plaintiff finished the eleventh grade in high school and dropped out during his senior year. He was suspended once for fighting. [R. 329]. Plaintiff has been married four times and has three adult children. He does not maintain a relationship with his children. [R. 329]. Plaintiff has a history of chemical dependency starting at age 19, including heavy use of alcohol, cocaine, methamphetamine, benzodiazepines, narcotics and marijuana. [R. 162, 165, 228, 236, 238, 279, 307, 329, 330, 387 392]. Plaintiff has benefitted from substance abuse treatment and has achieved sustained periods of sobriety. [R. 228]. His medical issues include hepatitis C, back pain, bipolar disorder and depression. [R. 228]. Plaintiff reports that in 1979, he was injured in a motor vehicle accident which fractured his jaw and cheek and injured his spleen. [R. 329, 402]. The accident occurred when he passed out from drinking. [R. 403]. He was diagnosed with hepatitis C in 1985. In 1994, plaintiff was injured on the job when a piece of steel fell on his back and neck. He had surgery to implant hardware in his neck. [R. 329]. He underwent a lumbar diskectomy in 1994 and cervical diskectomy in 1995. Plaintiff was injured while employed as a machinist for Crane Carrier. He had maintained his employment with Crane for eighteen years. [R. 75]. Following surgery, he remained off work for two years. [R. 402]. He later worked as a grounds keeper for a cemetery, general labor for temporary services and most recently as a painter. [R. 75, 401]. In 1992, he completed a twenty-eight day residential chemical dependency program at Laureate Psychiatric Hospital. He has attended meetings with Alcoholics Anonymous, Narcotics Anonymous, and Cocaine Anonymous. He smokes one pack of cigarettes

daily. [R. 330]. In November 2006, plaintiff was arrested for driving under the influence of alcohol. [R. 329]. Plaintiff lists his impairments as major depression, bipolar-manic disorder, memory problems, hepatitis C, back injury and liver damage. [R. 90].

The ALJ found that plaintiff has not engaged in gainful activity since October 1, 2003. He determined his severe impairments to be hepatitis C, bipolar disorder, and borderline intellectual functioning. [R. 17]. He found that plaintiff's impairments, in combination, did not meet or medically equal the listed impairments, specifically listing 12.04 (Affective Disorders) or 12.05 (Mental Retardation). The ALJ determined plaintiff has mild restrictions in daily living, mild difficulties in social functioning, moderate difficulties in concentration, persistence or pace, and that he has no episodes of decompensation. [R. 18-19]. The ALJ found that plaintiff has the residual functional capacity ("RFC") to perform medium work except with only casual contact with the public. [R. 19].

The ALJ found plaintiff's testimony of having disabling pain and mental distraction less than credible. [R. 20]. The ALJ determined that plaintiff is unable to return to his past work as a day laborer, because it was heavy exertion labor. [R. 21]. However, based on his findings and the testimony of the vocational expert, the ALJ concluded that plaintiff was capable of working as a machine operator, machine attendant and touch up screener, and that employment opportunities in those fields existed in significant numbers in the regional and national economy. Thus, the ALJ determined that plaintiff was not disabled within the meaning of the Social Security Act. This finding was made at the fifth step in the five step inquiry outlined in <u>Williams v. Bowen</u>, 844 F.2d

748, 750-52 (10th Cir. 1988) (discussing the five steps in detail).[1]

## Discussion

First, plaintiff contends the ALJ propounded a faulty hypothetical question to the vocational expert because the question: (1) did not include all of plaintiff's limitations, (2) did not delineate any physical limitations for work-related activities, (3) contained more restrictive limitations than the ALJ ultimately found, and (4) did not include plaintiff's moderate limitation in concentration, persistence and pace. [Dkt. # 16 at 2-4]. The Court disagrees. The ALJ propounded the following hypothetical question to the vocational expert.

> If I gave you a hypothetical claimant of this claimant's age, educational background, and prior work experience, who would do a range of medium exertional level work inclined to simple tasks with routine supervision and no contact with the general public other than casual, in other words, no selling jobs or anything like that.

[R. 420]. Plaintiff faults the ALJ for not including the opinion of plaintiff's treating physician in his hypothetical. Plaintiff relies on the Mental RFC Assessment by plaintiff's treating physician as an itemization of plaintiff's moderate mental limitations.[2] The Court finds no merit in this argument, because the ALJ did restrict his hypothetical to plaintiff performing only "simple tasks with routine

---

[1] The five-step sequence provides that the claimant (1) is not gainfully employed, (2) has a severe impairment, (3) has an impairment which meets or equals an impairment presumed by the Secretary to preclude substantial gainful activity, listed in Appendix 1 to the Social Security Regulations, (4) has an impairment which prevents them from engaging in their past employment, and (5) has an impairment which prevents them from engaging in any other work, considering their age, education, and work experience. Ringer v. Sullivan, 962 F.2d 17 (10th Cir. 1992) (unpublished) (citing Williams v. Bowen, 844 F.2d at 750-52).

[2] Specifically, his treating physician opined that plaintiff was moderately limited in the ability to remember locations and work-like procedures, understand and remember detailed instructions, make simple work-related decisions, interact appropriately with the general public, ask simple questions or request assistance, accept instructions and respond appropriately to criticism from supervisors, travel in unfamiliar places or use public transportation. [Dkt. # 16 at 3, R. 389-390].

supervision." This condition clearly accommodates plaintiff's moderate restriction in mental functioning. Plaintiff's treating physician, Dr. Bryan Cates, tendered his mental assessment of plaintiff five months after the ALJ rendered his decision. His completed form states that the "Assessment is for CURRENT EVALUATION." [R. 389] (capital lettering in text). Plaintiff offered no evidence that Dr. Cates' assessment is relevant to the adjudicated period in this case. Further, Dr. Cates indicated several areas of mental functioning in which plaintiff had no significant limitations and even more areas of mental functioning that Dr. Cates had insufficient evidence in which to rendered an assessment. [R. 389-390]. Plaintiff's argument is essentially a request for the Court to reweigh the evidence in his favor, which is something the Court can not do.

Plaintiff faults the ALJ's hypothetical for failing to include any physical limitations for sitting, standing, walking, lifting, carrying, pushing, pulling, stooping, crouching, reaching, and handling. The Court rejects this argument. The ALJ's inclusion of "a range of medium exertional level work" supplied the physical limitations contained in 20 CFR §§ 404.1567(c) and 416.967 (c). "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, we determine that he or she can also do sedentary and light work." Id. §§ 404.1567, 416.967(c). The regulations establish the physical requirements for a claimant capable of performing a full range of medium exertional work:

> A full range of medium work requires standing or walking, off and on, for a total of approximately 6 hours in an 8-hour workday in order to meet the requirements of frequently lifting or carrying objects weighing up to 25 pounds. As in light work, sitting may occur intermittently during the remaining time. Use of arms and hands is necessary to grasp, hold, and turn objects, as opposed to the finer activities in much sedentary work, which require precision of the fingers as well as use of the hands and arms. The considerable lifting required for the full range of medium work usually frequent bending-stooping. (Stooping is a type of bending in which a person bends his or her body downward and forward by bending the spine at the waist.) Flexibility

> of the knees as well as the torso is important for this activity. (Crouching is bending both the legs and spine in order to bend the body downward and forward.) However, there are relatively few occupations in the national economy which require exertion in terms of weights that must be lifted at time (or involve equivalent exertion in pushing and pulling), but are performed primarily in a sitting position, e.g., taxi driver, bus driver, and tank-driver (semi-skilled jobs). In most medium jobs, being on one's feet for most of the workday is critical. Being able to do frequent lifting or carrying of objects up to 25 pounds is often more critical than being able to lift up to 50 pounds at a time.

SSR 83-10. Thus, the Court finds that the ALJ's hypothetical to the vocational expert was sufficient to convey the physical limitations and demands of work. The ALJ could reasonably rely on the vocational expert's knowledge of the law. Moreover, the ALJ allowed plaintiff's attorney to cross examine the vocational expert and he did not take the opportunity to inquire as to any of these physical activities.

Plaintiff faults the ALJ's hypothetical claiming it was more restrictive than what the ALJ ultimately found in his RFC assessment. This is a frivolous argument. The fact that the vocational expert testified that plaintiff could perform more restrictive jobs would necessarily encompass plaintiff's ability to perform less restrictive jobs.

Finally, plaintiff contends the ALJ's hypothetical was faulty, because it did not account for plaintiff's moderate deficiency in his concentration, persistence, or pace. Plaintiff is correct that hypothetical questions must reflect with precision all of plaintiff's impairments. However, they need only reflect impairments and limitations that are borne out by the evidentiary record. Evans v. Charter, 55 F.3d 530, 532 (10th Cir. 1995). The Court finds that the limitations contained in the ALJ's hypothetical question reflect and account for the impairments and limitations that are borne out by the evidence. The hypothetical question restricted plaintiff's work to "simple tasks with routine supervision and no contact with the general public other than casual." The ALJ entered the

following findings to support his assessment regarding plaintiff's moderate difficulty in concentration, persistence or pace:

> With regard to concentration, persistence or pace, the claimant has moderate difficulties. The claimant was found to have limited ability to tolerate stress. In the consultative examination performed on September 2, 2005, the examiner noted that the claimant was easily frustrated when he encountered difficulty and frequently had difficulty concentrating (Exhibit 11F). Difficulty with attention and concentration tasks was again noted on the consultative examination dated December 23, 2006 (Exhibit 20F). Both examinations found the claimant to have the ability to understand, retain, and follow instructions and <u>be able to perform simple tasks</u>. [R. 19]. (emphasis added).
>
> . . . .
>
> The claimant underwent a consultative examination on December 23, 2006. . . The claimant demonstrated the ability to understand, retain, and follow directions. His attention and concentration are most likely within normal limits, such that he would <u>be able to perform simple, repetitive tasks</u>. His ability to relate to others, including co-workers and supervisors was estimated to be fair and may depend upon whether or not he [was] in a depressive state. His ability to handle the stress of day to day interactions was judged to be fair (Exhibit 20F).
>
> The claimant stated on July 5, 2005 that he was taking his medication inconsistently and did better when taking regularly. The claimant returned to the Family and Children Services on April 2, 2008 stating that he had been off medicine around three months during time spent in Kansas with aunt's death. His <u>attention</u> and <u>concentration</u> was found to be <u>adequate</u>. (Exhibit 22F). (emphasis added).

[R. 20-21]. Thus the inclusion in the hypothetical question of "simple tasks with routine supervision and no contact with the general public other than casual" is a sufficient limitation under the evidence to account for plaintiff's moderate limitation in concentration, persistence, or pace. Plaintiff's subjective testimony to the contrary, by itself, was insufficient to establish a disabling impairment. The hypothetical question propounded to the vocational expert was also consistent with the ALJ's findings as to plaintiff's RFC. "The ALJ is only required to ask hypotheticals encompassing impairments that find support in the record." See <u>Jordan v. Heckler</u>, 835 F.2d 1314, 1317 (10th Cir.

8

1987). In this instance, the ALJ determined that plaintiff had only moderate deficiency in concentration, persistence, or pace and the ALJ's findings are supported by substantial evidence. Thus, the Court finds no error in the ALJ's hypothetical question to the vocational expert.

Second, plaintiff contends the Appeals Council failed to perform a proper evaluation of plaintiff's treating physician's mental RFC assessment. Dr. Bryan Cates, plaintiff's treating physician, completed his assessment on October 24, 2008. It was submitted to the Appeals Council after the ALJ rendered his decision on May 30, 2008. [R. 22]. The duty of the Appeals Council is defined under 20 C.F.R. §§ 404.970(b), 416.1470(b), which provides:

> If new and material evidence is submitted, the Appeals Council shall consider the additional evidence only where it relates to the period on or before the date of the administrative law judge hearing decision. The Appeals Council shall evaluate the entire record including the new and material evidence submitted if it relates to the period on or before the date of the administrative law judge hearing decision. It will then review the case if it finds that the administrative law judge's action, findings, or conclusion is contrary to the weight of the evidence currently of record.

Id. § 404.970(b). In denying review of the ALJ's decision the Appeals Council stated, in relevant part: "In looking at your case, we considered the additional evidence listed on the enclosed Order of Appeals Council. We found that this information does not provide a basis for changing the Administrative Law Judge's decision." [R. 5-6]. The form completed by Dr. Cates emphasized he was to perform a "CURRENT EVALUATION." [R. 389]. Thus, because Dr. Cates' assessment did not relate to the period "on or before" the date of the administrative law judge's decision, the Appeals Council did not err in failing to evaluate the entire record in conjunction with this "new evidence."

Finally, plaintiff contends the ALJ failed to perform a proper credibility determination. Plaintiff claims the ALJ erred in failing to: (1) acknowledge that his hospitalization for attempted

suicide was a decompensation of extended duration, (2) determine why plaintiff had significant gaps in medical treatment, and (3) acknowledge that plaintiff had a global assessment functional score ranging from 45 to 50. The court finds no merit in these allegations. The ALJ summarized the relevant portion of plaintiff's testimony:

> The claimant testified that he is unable to work due to combination of neck and back surgeries, concentration problems, and problems being around people. He also testified that his hepatitis prevents him from working.

[R. 20]. In assessing plaintiff's credibility, the ALJ considered the evidence of record and found that plaintiff's medically determinable impairments could reasonably be expected to produce the alleged symptoms, however, his statements concerning the intensity, persistence, and limiting effects of the symptoms were not credible to the extent they were inconsistent with the RFC assessment. [R. 20]. The ALJ acknowledged that plaintiff received in-house treatment at the Tulsa Center for Behavioral Health on February 13, 2006, following a dispute with his roommate. The plaintiff "admitted suicidal ideation and a major anger outburst." [R. 20]. He was diagnosed with bipolar disorder and discharged nine days later with the expectation that he would continue his treatment at the Indian Resource Center. [R. 20]. The ALJ noted that rather than maintaining a medication and treatment plan, from June 9, 2005 through April 24, 2006, plaintiff missed multiple treatment visits scheduled with the Claremore Indian Hospital. On April 2, 2008, he went to Family and Children Services. There plaintiff admitted that he had been off his medication for three months. The ALJ stated that both facilities noted that when plaintiff followed a treatment and medication plan his "prognosis was good," and his attention and concentration was "adequate." [R. 20-21]. Based on the above cited evidence, the ALJ concluded:

> The claimant has been inconsistent with his mental health treatment. It is noted when

> compliant with treatment and medication, the claimant presents with little impairment. The record reflects significant gaps in the claimant's history of treatment. The Administrative Law Judge finds that the claimant's mental health impairments do not prevent him from substantial gainful activity.

[R. 21]. The ALJ also noted that plaintiff had first sought psychiatric help when he was nineteen years old, but that it had been a "long time" since he had "regular counseling." [R. 20]. The ALJ relied on the opinion of Jeri Fritz, Ph.D. a licensed clinical psychologist, to impeach plaintiff's credibility:

> The claimant demonstrated the ability to understand, retain, and follow directions. His attention and concentration are most likely within normal limits, such that he would be able to perform simple, repetitive tasks. His ability to relate to others, including co-workers and supervisors was estimated to be fair and may depend upon whether or not he [is] in a depressive state. His ability to handle the stress of day to day interactions was judged to be fair (Exhibit 20F).

[R. 20]. The Tenth Circuit has held that a claimant's failure to follow a doctor's instructions is a factor in determining credibility. Sims v. Apfel, 172 F.3d 879 (10th Cir. 1999) (unpublished). Plaintiff fails to cite conclusive medical evidence which contradicts the ALJ's assessment of plaintiff's credibility. Plaintiff's argument addresses the weight rather than the sufficiency of the evidence. Thus, the Court finds that the ALJ's determination of plaintiff's credibility is supported by substantial evidence. Further, the ALJ linked his credibility determination to supporting evidence. He thoroughly explained his credibility determination, citing inconsistencies between plaintiff's testimony and the medical evidence. In Kepler v. Chater, 68 F.3d 387 (10th Cir. 1995), the court held the ALJ's credibility determination was inadequate because the ALJ simply recited the general factors he considered and then said the plaintiff was not credible based on those factors. The court explained that the ALJ must refer to the specific evidence he is relying on in determining credibility and link the credibility findings to specific evidence. Id. at 391. In the instant case, the

ALJ complied with this standard. In Qualls v. Apfel, 206 F.3d 1368 (10th Cir. 2000), the court stated that "our opinion in Kepler does not require a formalistic factor-by-factor recitation of the evidence. So long as the ALJ sets forth the specific evidence he relies on in evaluating the claimant's credibility, the dictates of Kepler are satisfied." Id. at 1372. "Credibility determinations are peculiarly the province of the finder of fact." Hackett v. Barnhart, 395 F.3d 1168, 1171 (10th Cir. 2005).

In closing, plaintiff claims the ALJ erred in not considering plaintiff's global assessment function ("GAF") score ranging from 45 to 50, as evidence of "serious symptoms" and an inability to keep a job.[3] The Court finds no merit to this contention, because the ALJ did take into consideration medical evidence of plaintiff's psychological evaluation, which employs similar factors to those used to arrive at a GAF score. The ALJ gave specific reasons for his findings with references to the record in his RFC determination. The Tenth Circuit has stated that, "a low GAF score does not alone determine disability, but it is instead a piece of evidence to be considered with the rest of the record." Petree v. Astrue, 260 Fed.Appx. at 42 (citing Howard v. Comm'r of Soc.Sec., 276 F.3d 235, 241 (6th Cir. 2002)) ("While a GAF score may be considerable help to the ALJ in formulating the RFC, it is not essential to the RFC's accuracy."). GAF scores of 45 and 50 do not automatically qualify a claimant for disability. A score of 41-50 indicates "[s]erious symptoms (e.g., suicidal ideation), severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational or school functioning (e.g., no friends, unable to keep a job)." Manual at 34. Dr. Fritz, who rated plaintiff's GAF score, did not indicate that he could not work. [R. 329-331].

---

[3] A GAF score is a subjective determination based on a scale of 100 to 1 of the clinician's judgment of the individual's overall level of functioning. See American Psychiatric Association, Diagnostic & Statistical Manual of Mental Disorders 32 (4th ed. 2000). (hereinafter "Manual").

Because a GAF score ranging from 45 to 50 may not relate to plaintiff's ability to work, the scores, standing alone and without further explanation, "do[] not establish an impairment severely interfering with an ability to perform basic work activities." Eden v. Barnhart, 109 Fed.Appx. 311, 314 (10th Cir. 2004) (unpublished) (a GAF score of 50, standing alone, without further explanation, does not establish an inability to perform basic work activities.)

Accordingly, the Court finds that the ALJ's decision is supported by substantial evidence in the record and the correct legal standards were applied.

## **Conclusion**

Based on the foregoing, the Court AFFIRMS the decision of the Commissioner denying disability benefits to plaintiff.

SO ORDERED this 5th day of August, 2010.

_____
T. Lane Wilson
United States Magistrate Judge